IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MOHAMED BASEL ASWAD,

               Plaintiff,

v.                                             No. CV 16-505 KG/GJF

JEH JOHNSON et al.,

               Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Defendants Jeh Johnson, Leon Rodriguez, Mario Ortiz, Margaret A. Hartnett, and the United States Citizenship and Immigration Services' (collectively, the "Defendants") *Motion to Dismiss* (the "Motion"), (Doc. 20), filed September 30, 2016; *Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim* (the "Response"), (Doc. 21), filed October 17, 2016; and Defendants' *Reply Brief in Support of Defendants' Motion to Dismiss* (the "Reply"), (Doc. 24), filed November 9, 2016. United States District Judge Kenneth J. Gonzales referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition of the case. (Doc. 26). After considering the parties' filings and the relevant law, the Court **RECOMMENDS** that Defendants' Motion be **DENIED**.

    **I.**        **Factual Allegations[1]**

Plaintiff Mohamed Basel Aswad filed his *Petition for Hearing on Naturalization* (the "Original Petition") on May 21, 2016 alleging that Defendant United States Citizenship and Immigration Services ("USCIS") wrongly denied his Application for

---

[1] At this stage of the proceedings, the Court takes all factual allegations in the Complaint as true.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Naturalization. (Doc. 1). Plaintiff subsequently filed an *Amended Petition for Hearing on Naturalization*, (the "Amended Petition") on September 16, 2016. (Doc. 18). The facts are alleged as follows: Plaintiff is a physician practicing internal medicine, hematology, and oncology in the Deming area since 2003. (Doc. 1-22, Ex. 21 at 3-4).[2] In 2012, agents from the Food and Drug Administration served a search warrant on Plaintiff's medical practice. (Doc. 1-22, Ex. 21 at 4).

On March 20, 2014, Plaintiff filed an Application for Naturalization, (Doc. 1-2, Ex. 1), and was scheduled for a naturalization interview on September 11, 2014. (Doc. 1-3, Ex. 2). At the interview, Plaintiff notified USCIS that a search warrant had been served on his medical practice. (Doc. 13 at 13).

A criminal information was subsequently filed against Plaintiff on September 23, 2014 charging him with causing the introduction into interstate commerce of misbranded drugs in violation of 21 U.S.C. §§ 331(a), 333(a)(1) and forfeiture in violation of 18 U.S.C § 982(a)(7), 21 U.S.C. § 334, and 28 U.S.C. § 2461. (Doc. 1-5, Ex. 4). On November 4, 2014, Plaintiff entered a guilty plea to one count of misbranding in violation of 21 U.S.C. §§ 331(a), 333(a)(1) and was sentenced to a term of probation for three years on August 4, 2015. (Doc. 1-6, Ex. 5; Doc. 1-8, Ex. 7; Doc. 1-9, Ex. 8 at 2). In addition to probation, Plaintiff was ordered to pay a $1,000.00 fine, a monetary judgment of $750,000.00, restitution to Medicare/Medicaid in the amount of $1,277,589.00, and restitution to United Healthcare/Tricare in the amount of $20,954.00. (Doc. 1-9, Ex. 8 at 4). According to the plea agreement, Plaintiff admitted to purchasing prescription chemotherapy drugs from a Canadian company that were not

---

[2] References to exhibits refer to the exhibits attached to the Original Petition as exhibits were not attached to the Amended Petition. (*See* Docs. 1, 18).

2

manufactured for distribution in the United States, administering the drugs, and receiving payment for them. (Doc. 1-8, Ex. 7 at 4). Subsequently, on April 11, 2016, Plaintiff was discharged early from probation. (Doc. 1-10, Ex. 9).

The New Mexico Medical Board ("NMMB") suspended Plaintiff's medical license on November 13, 2014. (Doc. 1-23, Ex. 22 at 10). Thereafter, NMMB conducted an investigation and hearings in association with these matters on December 1, 2014 and February 11, 2015, but Plaintiff was ultimately allowed to continue practicing medicine. (Doc. 1-23, Ex. 22 at 5-28).

After his interview with USCIS, on December 24, 2014, USCIS approved Plaintiff's naturalization application and scheduled him for a Naturalization Oath Ceremony taking place on January 16, 2015. (Doc. 1-4, Ex. 3). Prior to the ceremony, Plaintiff informed USCIS that he pled guilty to criminal charges. (Doc. 1-11, Ex. 10). USCIS cancelled Plaintiff's participation in the oath ceremony on January 9, 2015. (Doc. 1-12, Ex. 11). Subsequently, USCIS reopened Plaintiff's naturalization application and denied it on February 19, 2015. (Doc. 1-13, Ex. 12).

Plaintiff appealed the denial because he was not given notice and an opportunity to respond to the denial, as required by 8 C.F.R. § 103.5(a)(5)(ii). (Doc. 18 at 14-15). USCIS reopened his naturalization case for the second time and issued a Notice of Intent to Deny ("NOID") on March 6, 2015. (Doc. 1-15, Ex. 14). The NOID was issued because USICIS had erroneously denied Plaintiff's application without giving him notice and an opportunity to respond to the decision. (Doc. 1-15, Ex. 14).

The March 6, 2015 NOID contained several errors and USCIS issued a new NOID on June 19, 2015, alleging that Plaintiff lacked the required good moral character

3

to become a citizen. According to USCIS, he committed "unlawful acts [which] reflects adversely on [his] moral character because [he was] aware or should have been aware that misbranded drugs were being introduced into the United States stream of commerce." (Doc. 1-18, Ex. 17 at 2). On September 16, 2015, USCIS issued a final decision denying Plaintiff's application for naturalization for failure to meet his burden to establish good moral character during the statutory period. (Doc. 1-21, Ex. 20).

Plaintiff appealed the final decision and appeared at an appeals hearing on December 17, 2015. (Doc. 1-22, Ex. 21; Doc. 1-24, Ex. 22). USCIS affirmed the denial of Plaintiff's naturalization application for failure to show he was a person of good moral character during the statutory period. (Doc. 1-25, Ex. 23). Subsequently, Plaintiff filed his Original Petition with this Court on May 31, 2016. (Doc. 1). Defendants then filed their Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), (Doc. 20). Defendants argue that Plaintiffs' Amended Petition fails to state a claim upon which relief can be granted because Plaintiff is ineligible for the relief he seeks. (Doc. 20 at 1). On this ground, Defendants ask the Court to dismiss the Petition. (Doc. 20 at 19).

## II.     Standard of Review

The Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain" statement of: (1) the ground supporting the court's jurisdiction; (2) the claim showing that the plaintiff is entitled to relief; and (3) a demand for the relief sought. FED. R. CIV. P. 8(a). A defendant may move the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact that, taken as true, "state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citations omitted). While the court must accept as true all of the allegations in the complaint, the court need not grant the same deference to conclusory statements. *Iqbal*, 556 U.S. at 678. Moreover, "a formulaic recitation of the elements of a cause of action" will not suffice to state a claim. *Twombly*, 550 U.S. at 555. Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

In evaluating a 12(b)(6) motion, the Court may consider the complaint, attached exhibits, "and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (collecting cases). The Court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

Under the Immigration and Naturalization Act ("INA"), Congress granted jurisdictional authority for federal district courts to review *de novo* the denial of an application for naturalization. 8 U.S.C. § 1421(c). "Because the 'Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship,' the burden is on the Plaintiff to show his 'eligibility for citizenship in every

5

respect.'" *Bidzimou v. USCIS*, No. 13-1124-SAC, 2013 WL 4094440, at *2 (D. Kan. Aug. 13, 2013) (unpublished) (quoting *Berenyi v. INS*, 385 U.S. 630, 637 (1967)).

To survive a motion to dismiss, a Plaintiff in a naturalization action must plead that he: "(1) was lawfully admitted to the United States as a permanent resident, (2) has resided continuously; and has been physically present in the United States for the required statutory period; and (3) is a person of good moral character and has been so for at least the five years preceding the filing of his naturalization application." *Bidzimou*, 2013 WL 4094440, at *2 (citing 8 U.S.C. §§ 1427, 1429). Defendants do not dispute that Plaintiff meets the first two factors; however, the parties disagree as to whether Plaintiff can show that he is a person of good moral character. Therefore, the Court will focus its analysis on the third factor.

### III. Analysis

In their Motion, Defendants argue that, based on the undisputed facts in the Amended Petition, Plaintiff is ineligible to naturalize. (Doc. 20 at 1). Defendants state that Plaintiff has the burden of proving that he is of good moral character and he cannot demonstrate good moral character because of his conviction for buying misbranded chemotherapy drugs. (Doc. 20 at 10-16). Further, Defendant argues that Plaintiff cannot establish extenuating circumstances that would excuse his conduct. (Doc. 20 at 16-18).

Plaintiff responds that although he committed unlawful acts, these acts do not adversely reflect on his moral character. (Doc. 21 at 16; 18-20). Even if his act of purchasing and using misbranded chemotherapy drugs reflected on his moral character, Plaintiff contends that there are extenuating circumstances that excuse his conduct. (Doc. 20 at 21-22).

### A. *Establishing Good Moral Character*

The issue before the Court is whether Plaintiff can establish good moral character. USCIS determines whether an applicant meets the good moral character standard "on a case-by-case basis taking into account the elements enumerated in [8 C.F.R. § 316.10(a)(2)] and the standards of the average citizen of the community." 8 C.F.R. § 316.10(a)(2). USCIS regulations specifically require a person to be of good moral character for the five years preceding the filing of a naturalization application; however, USCIS

> is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time . . . if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

*Id.*

Federal law does not expressly define good moral character. Rather, the Immigration and Nationality Act ("INA") enumerates conduct that prohibits a finding of good moral character. This conduct includes a person who: (1) is a "habitual drunkard;" (2) is a certain class of inadmissible alien as defined by 8 U.S.C. § 1182(a); (3) derives income primarily from illegal gambling activities; (4) is convicted of two or more gambling offenses; (5) has given false testimony in order to obtain an immigration benefit; (6) has been imprisoned for one hundred and eighty days or more; (7) has been convicted of an aggravated felony; or (8) engaged in "Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing" in violation of 8 U.S.C. § 1182(a)(3)(E) or committed "particularly severe violations of religious freedom" in violation of § 1182(a)(2)(G). 8 U.S.C. § 1101(f)(1)-(9). A person falling into one of these

7

enumerated categories cannot establish good moral character as a matter of law. Plaintiff's crime does not fall into any of these categories; however, the INA also contains a catch-all provision, which states: "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." § 1101(f).

Federal regulations state that "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts." § 316.10(b)(3)(iii). Therefore, if the Court finds that Plaintiff's crime adversely reflects on his moral character, Plaintiff must prove that there were extenuating circumstances.

The Court now turns to whether Plaintiff's conviction for using misbranded chemotherapy drugs negatively reflects on his moral character as a matter of law.

  B. <u>Whether Plaintiff's Unlawful Act Adversely Reflects on his Moral Character</u>

Here, the parties agree that Plaintiff was convicted of an unlawful act, buying and using misbranded drugs in violation of 21 U.S.C. §§ 331(a), 333(a)(1). Defendants argue that the facts, as alleged in the Amended Petition, make Plaintiff ineligible for naturalization. (Doc. 20 at 10). Specifically, Defendants maintain that "[t]he nature and magnitude of [Plaintiff's] conduct – selling misbranded chemotherapy drugs to cancer patients – adversely reflects on his moral character as a matter of law." (Doc. 24 at 3).

Plaintiff's unlawful act does not fall within one of the enumerated categories prohibiting a finding of good moral character; therefore, the Court will consider both

8

Plaintiff's unlawful act and other factors relevant to the determination of good moral character. *See Torres-Guzman v. INS*, 804 F.2d 531, 534 (9th Cir. 1986) ("[i]n the absence of a congressionally imposed *per se* rule, a statutory [directive] to determine the presence or absence of good moral character requires the fact finder to weigh and balance the favorable and unfavorable facts or factors, reasonably bearing on character, that are presented in evidence."). Relevant factors may include: "education, family background, employment history, financial status, and lack of criminal record." *Hussein v. Barrett*, 820 F.3d 1083, 1088 (9th Cir. 2016) (citing *Torres-Guzman*, 804 F.3d at 533).

Plaintiff is a physician who has, since 2003, practiced in Deming, New Mexico, where he is the only oncologist, hematologist, and internist in the area. (Doc. 18 at ¶¶ 32-34). He is one of six physicians that serve a population of approximately 25,000 residents. (Doc. 18 at ¶ 42). Plaintiff purchased cancer drugs from mail order pharmacies because the pharmacies in the area do not dispense these drugs. (Doc. 18 at ¶¶ 46, 48). Plaintiff claimed that he had no knowledge that he purchased drugs that were not approved by the FDA until FDA agents searched his practice. (Doc. 18 at ¶¶ 53-54). Following its investigation, the NMMB determined that Plaintiff was not aware that he was administering non-FDA approved drugs to his patients. (Doc. 1-23, Ex. 22 at 9, 22). During the FDA investigation, Plaintiff participated fully and self-reported the FDA search to the NMMB. (Doc. 1-23, Ex. 22 at 10, 23-24).

Although Plaintiff profited from the non-FDA approved drugs he administered, the NMMB Hearing Officer noted that the price for cancer drugs varies from supplier to supplier, and the Hearing Officer could not make the conclusion that Plaintiff was over-

reimbursed for the drugs. (Doc. 1-23, Ex. 22 at 24). The Hearing Officer determined that the amount Plaintiff was reimbursed was neither "unusual nor alarming." (Doc. 1-23, Ex. 22 at 25).

The Court weighs this evidence against Plaintiff's criminal act. The NMMB Hearing Officer stated that Plaintiff "unquestionably subjected his patients to the dangers associated with the use of non-FDA approved medications" and did not immediately abide by NMMB's suspension of his medical license.[3] (Doc. 1-23, Ex. 22 at 26). Plaintiff pled guilty of violating the Food, Drug, and Cosmetic Act ("FDCA"), which was passed for the primary purpose of "protect[ing] the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014). FDCA created a strict-liability criminal offense. *See* 21 U.S.C. § 333.

However, despite his unlawful action, the NMMB did not take permanent adverse action against Plaintiff. The Hearing Officer stated that:

> [b]ased on the testimony and letters of support of [Plaintiff's] patients and colleagues, there is a real risk of harm to the Deming community if [Plaintiff] is unable to practice medicine. The evidence offered at the hearings shows that Deming is an underserved community, and the patients who need oncology services have expressed a concern that they will have to travel several hours from home in order to obtain the necessary treatment of their conditions. The reports and testimony offered by [Plaintiff's] patients and colleagues show that [Plaintiff] is a talented and compassionate practitioner.

(Doc. 1-23, Ex. 22 at 27).

---

[3] The NMMB suspended Plaintiff's license on November 13, 2014; however, the notice of summary suspension was dated November 17, 2014. (Doc. 1-23, Ex. 22 at 14). Plaintiff's attorney was notified by email on November 17, 2014 of the suspension. (Doc. 1-23, Ex. 22 at 16). Plaintiff's attorney advised Plaintiff that he could continue working until Plaintiff received the suspension notice in the mail. (Doc. 1-23, Ex. 22 at 16). Plaintiff received the notice by mail on November 21, 2014 and stopped working; however, he should have ceased working when he was notified of the suspension on November 17, 2014. (Doc. 1-23, Ex. 22 at 16, 22).

Although Plaintiff committed a crime that could have harmed his patients, it appears from the evidence that Plaintiff is a valued member of the Deming community and there are other mitigating factors through which Plaintiff may establish good moral character. Therefore, based on the facts in the Amended Petition and the exhibits, the Court finds that Plaintiff's unlawful act does not, as a matter of law, require an adverse finding as to his good moral character.

For their argument, Defendants rely primarily on *United States v. Jammal*, 90 F. Supp. 3d 618 (S.D. W. Va. Feb. 9, 2015). On a motion for summary judgment, for an individual USCIS argued should lose his citizenship after being naturalized, the court found that an individual convicted under 21 U.S.C. § 331 for introducing into interstate commerce misbranded food could not establish good moral character based on the totality of his actions. *Jammal*, 90 F. Supp. 3d at 625. The individual repackaged infant formula, which the Court found to be "conduct that potentially threatens the health of the youngest and most vulnerable among us, for little more than economic gain." *Id*. The Court noted that the applicant "directly or indirectly caused dates to be placed on infant formula cases . . . with full knowledge that the manufacturers used those dates to signal the 'use by' dates," but that knowledge did not stop the applicant. *Id*. The Court found that his "unlawful and fraudulent acts adversely reflect on [the applicant's] moral character, demonstrating a willful disregard for public health and fair dealing." *Id.*

The case at bar can be distinguished from *Jammal*. Here, it is clear from the evidence and the findings of the NMMB that unlike the applicant in *Jammal*, Plaintiff did not purchase non-FDA approved cancer medication for "economic gain." (*See* Doc 1-23, Ex. 22 at 24-25). Additionally, in *Jammal*, the applicant argued that the conduct at

11

issue occurred three years before the indictment and he cooperated with authorities, which the Court did not find to be enough to overcome the fact that his conduct adversely reflected on his moral character. By contrast, this Court has determined that the favorable factors bearing on Plaintiff's moral character could outweigh the unfavorable factors. In sum, the Court concludes that Plaintiff's Amended Pleading provides sufficient facts to survive Defendants' Motion to Dismiss.

### IV. Recommendation

For the reasons discussed above, the Court finds that taking all of Plaintiff's allegations as true, Defendant has not established, as a matter of law, that Plaintiff cannot show the requisite good moral character in order to naturalize as an American citizen.

**IT IS THEREFORE RECOMMENDED** that Defendants' *Motion to Dismiss*, (CV Doc. 20), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

*[signature]*

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE