IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MOHAMED BASEL ASWAD,

        Petitioner,

v.                                                 No. CV 16-505 KG/GJF

JEH JOHNSON, et al.,

        Defendants.

**ORDER SUSTAINING OBJECTIONS TO MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court upon the Defendants' Objections to Proposed Findings and Recommended Disposition ("Objections"), (Doc. 28), filed on December 16, 2016. Petitioner filed a response to the Objections on December 30, 2016. (Doc. 29). Having considered the Objections and the response brief, the Court sustains the Objections and Grants Defendants' Motion to Dismiss, (Doc. 20), filed September 30, 2016.

*A. Background*

On May 31, 2016, Petitioner Mohamed Basel Aswad filed his Petition for Hearing on Naturalization ( "Original Petition"), alleging that Defendant United States Citizenship and Immigration Services ("USCIS") wrongly denied his Application for Naturalization. (Doc. 1). Petitioner filed an Amended Petition for Hearing on Naturalization ("Amended Petition") on September 16, 2016. (Doc. 18). Thereafter, Defendants filed a Motion to Dismiss, arguing that Petitioner's Amended Petition fails to state a claim upon which relief can be granted, as Petitioner is ineligible for the relief he seeks. (Doc. 20) at 1.

The Court referred Defendants' Motion to Dismiss to a United States Magistrate Judge to perform legal analysis and recommend an ultimate disposition. (Doc. 26). On December 2,

2016, the Magistrate Judge concluded that, taking all of Petitioner's allegations as true, Petitioner has pled sufficient facts to show that he could be eligible to naturalize. (Doc. 27) at 12. Accordingly, the Magistrate Judge ultimately recommended in the Proposed Findings and Recommended Disposition ("PFRD") that Defendants' Motion to Dismiss be denied. *Id*.

Defendants object to the Magistrate Judge's ultimate finding in the PFRD. Specifically Defendants object to the PFRD because it (1) makes factual findings that are inconsistent with the allegations of the Complaint and the documents attached to the Complaint; (2) considers a broader range of factors than the regulation contemplates in assessing whether Petitioner's crime adversely reflects on his moral character; and (3) expands the definition of "extenuating circumstances" to encompass factors that do not relate directly to Petitioner's culpability for his crime. (Doc. 28 at 1).

B. Discussion

*1. Standard of Review*

A party may serve and file specific written objections to a magistrate judge's proposed findings and recommendations. FED. R. CIV. P. 72(b)(2). An objection must be both timely and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). However, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (internal citations omitted).

When resolving objections to a magistrate judge's recommendation, the Court must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

*2. Establishing Good Moral Character*

In order to survive a motion to dismiss, a Petitioner in a naturalization action must plead that he: "(1) was lawfully admitted to the United States as a permanent resident, (2) has resided continuously, and has been physically present in the United States for the required statutory period; and (3) is a person of good moral character and has been so for at least the five years preceding the filing of his naturalization application." *Bidzimou v. USCIS*, 2013 WL 4094440, at *2 (D. Kan.) (unpublished) (citing 8 U.S.C. §§ 1427, 1429). Here, the parties dispute whether there are sufficient facts for Petitioner to prove the requisite good moral character.

Both a statute and a regulation govern the determination of good moral character. *See* 8 U.S.C. § 1101(f), 8 C.F.R. § 316.10. The statute does not define good moral character, but lists specific characteristics that would preclude a finding of good moral character. 8 U.S.C. § 1101(f). A person that (1) is a "habitual drunkard;" (2) is a certain class of inadmissible alien as defined by 8 U.S.C. § 1182(a); (3) derives income primarily from illegal gambling activities; (4) is convicted of two or more gambling offenses; (5) has given false testimony in order to obtain an immigration benefit; (6) has been imprisoned for one hundred and eighty days or more; (7) has been convicted of an aggravated felony; or (8) engaged in "Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing" in violation of 8 U.S.C. § 1182(a)(3)(E) or committed "particularly severe violations of religious freedom" in violation of § 1182(a)(2)(G) is barred from making a showing of good moral character. *Id.* at § 1101(f)(1)-(9). Petitioner's crime of Receipt in Interstate Commerce of any Drug that is Misbranded, and the Delivery Thereof for Pay does not fall into any of these specific categories, but it does fall within

3

the "catch-all" provision, which states: "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." *Id*.

In this "catch-all provision," Congress intentionally left "a statutory gap for the administrative agency to fill." *United States v. Dang*, 488 F.3d 1135, 1140 (9th Cir. 2007). Therefore, if an individual falls into the "catch-all" provision in the statute, the regulation "offer[s] 'guidance to officials making moral character determinations.'" *Hussein v. Barrett*, 820 F.3d 1083, 1088 (9th Cir. 2016) (quoting *Dang*, 488 F.3d at 1139). The regulation states that claims of good moral character should be evaluated "on a case-by-case basis taking into account the elements enumerated in [the regulation] and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). The regulation reiterates the enumerated categories in the statute, as well and further states:

> [u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant ... [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts.

§ 316.10(b)(3)(iii).

### a. Objections to Moral Character Analysis

Defendants first object to the Magistrate Judge's moral character analysis. Defendants argue that the proper analysis in determining whether unlawful conduct adversely reflects on moral character is to consider the "nature and magnitude of the unlawful conduct and whether it violates the standards of an average citizen." (Doc. 28 at 5) (citing 8 C.F.R. § 316.10(a)(2); *United States v. Hsu*, 2016 WL 4179887, at *3 (D. Utah) (unpublished), *appeal docketed* No. 16-4171 (10th Cir. Sept. 23, 2016); *United States v. Jammal*, 90 F. Supp. 3d 618, 625 (S.D. W. Va. 2015)).

4

In weighing whether Petitioner's crime adversely reflects on his moral character, the Magistrate Judge considered the evidence of Petitioner's unlawful act, as well as the other "evidence relevant to [Petitioner's] character" to determine that Petitioner's unlawful act does not adversely reflect upon Petitioner's moral character. The Court disagrees with the Magistrate Judge's ultimate conclusion that Petitioner's illegal act does not adversely reflect upon his moral character and will, therefore, sustain Defendants' Objections.

As for his unlawful act or crime, Petitioner admitted that he placed an order for chemotherapy drugs with a "Canadian on-line company named NonRx" by calling a 1-866 number. (Doc. 1-8) at 4. Petitioner purchased the drugs and used them in his practice from approximately July 2010, to February 2012. (Doc. 1-23) at 7, ¶ 5. The medicine Petitioner received did not have adequate instructions for use. (Doc. 1-8) at 4. The package inserts were in Turkish and the medicine did not have the symbol "Rx only," as required by law. *Id*. Further, these drugs were not approved by the Food and Drug Administration ("FDA") for sale in the United States. *Id*. In the Amended Final Report and Recommendations of Hearing Officer, the Hearing Officer for the New Mexico Medical Board ("NMMB") found that "[i]f none of [Petitioner's] patients suffered setbacks in their health or well-being after being infused with the medications obtained from Non-RX and Others, the lack of harm can only be attributable to good fortune." *Id*. at 25. This Court finds that as the only oncologist in the area and one treating a vulnerable population of patients, cancer patients, Petitioner had a duty to insure he was providing his patients with appropriate, FDA approved medication. (Doc. 1-23) at 6, ¶ 2. Petitioner violated this duty and committed a serious crime in so doing.

In making his findings, the NMMB Hearing Officer found that Petitioner made $211,875.03 from selling the drugs from Non-RX to patients. *Id*. at 11, ¶ 38. Although the

NMMB Hearing Officer stated that "there is no basis on which one can draw a conclusion that [Petitioner] knew that he had been over-reimbursed for the medications[,]" Petitioner clearly profited from selling these medications to patients. (Doc. 1-23) at 24. Risking the health of patients for profit violates the standards of the average citizen, even if Petitioner's actions were merely negligent and not purposeful. Based on the serious circumstances of his crime, the Court finds that Petitioner was convicted of an unlawful act that adversely reflected on his moral character.

Petitioner argues, however, that the Court should evaluate Petitioner's standing in his community in order to analyze the standards of the average citizen in the community. (Doc. 29) at 2. Petitioner maintains that if an individual's standing in his community is very high, "an indiscretion that is completely out of character will not do much to affect his good moral character." *Id*. By contrast, for an individual whose standing is low, "even the smallest indiscretion can still be seen as a lack of good moral character." *Id*. Petitioner presents an example of an individual who never speeds, but decides one day to speed on his way home from work and is caught speeding versus a drag racer who has many tickets and is caught speeding. Petitioner argues that if the Court only looks at the crime of speeding, neither could establish good moral character based on the violation of the speed laws, but the regulation requires the Court to take into account the standards of the average citizen in the community. Hence, in Petitioner's scenario the individual who is speeding on the way home should still be able to establish good moral character based on his character and the circumstances of his crime. By contrast, the drag racer could not establish good moral character based on his history.

The Court believes there is a better analogy for this case than Petitioner's speeding analogy: Two individuals each stole a bottle of OxyContin capsules, and both were convicted of

theft. One sold the capsules to pain pill addicts for $25.00 per capsule while the other took his stolen bottle of capsules home to give to his terminally ill grandfather, dying of cancer, to comfort him during his last days. Both individuals have committed a crime that reflects adversely on their moral character as theft is a serious crime that violates the standards of the average citizen. However, the second individual may be able to establish extenuating circumstances for his crime. In view of the record that indicates Petitioner ordered the medication from a Canadian-based company; the packaging included Turkish language; the labeling indicated "non-Rx"; and the fact he made more than $200,000 from selling these drugs to particularly vulnerable patients, altogether liken Petitioner to the first individual in the analogy and adversely reflect on his moral character.

### b. *Extenuating Circumstances*

Because Petitioner's crime adversely reflects on his good moral character, the Court will determine if the unlawful acts were committed under extenuating circumstances. 8 C.F.R. § 316.10(b)(3)(iii). The Magistrate Judge did not address possible extenuating circumstances because she found that Petitioner's crime did not adversely reflect upon his moral character. However, this Court will do so because it has found that the crime adversely reflects upon Petitioner's moral character.

Extenuating circumstances "must pertain to [the] culpability for the" crime and "to the reasons showing lack of good character, including acts negating good character, not to the" immigration consequences. *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005). Specifically, extenuating circumstances "are those which render a crime less reprehensible than it otherwise would be, or 'tend to palliate or lessen its guilt.'" *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (citing BLACK'S LAW DICTIONARY (6th ed. 1990)).

7

In his response to the Motion to Dismiss, Petitioner makes four arguments to show that there are extenuating circumstances in this case. First, Petitioner argues that there is evidence in the record of Petitioner's good moral character and high standing in the community. (Doc. 21) at 21. Petitioner suggests that his "high reputation" in the community proves that he could not have engaged in the illegal acts knowingly, but the acts were "the result of an oversight and an honest mistake." *Id*. Second, Petitioner maintains that the NMMB determined that Petitioner's "ethics" were not "compromised." *Id*. at 22. Third, Petitioner contends he works long hours and the pharmaceutical companies spend huge resources marketing drugs to doctors; therefore, it was easy for Petitioner to make a mistake. *Id*. Finally, Petitioner maintains that the fact that he did not benefit financially from these acts is an extenuating circumstance. *Id*.

The Court is aware of Petitioner's reputation in his community and has read each of the letters submitted by Petitioner's colleagues and patients. (*See Doc.* 1-23) at 31-49. While the Court seriously considered these letters, they do not show extenuating circumstances that mitigate the seriousness of Petitioner's crime. Similarly, the NMMB's determination regarding Petitioner's ethics does not "tend to palliate or lessen" his guilt as the drugs he purchased and used in his practice were not approved for distribution in the United States. *Suarez*, 664 F.3d at 662.

The purpose of the Food, Drug, and Cosmetic Act, which Petitioner was convicted of violating, is to protect the health and safety of the public. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228, 2234 (2014). Therefore, even if Petitioner simply made a mistake in ordering the drugs and did not benefit financially from using them, Petitioner, nevertheless, put the health and safety of his patients at risk by purchasing these drugs. But as explained above, the record indicates this conduct which continues for almost two years, was other than a simple

mistake. This is the harm that the statute penalizes and Petitioner has not shown circumstances that lessen the seriousness of his crime. *Suarez*, 644 F.3d at 662-3.

The Court acknowledges that dismissal is a drastic consequence for Petitioner. However, "[t]he right to acquire United States citizenship is precious and coveted and its successful exercise rarer than many aspirants would hope for." *Jean-Baptiste*, 395 F.3d at 1191. The Court must look specifically at the offense Petitioner committed, and based on that offense, the Court cannot determine that Petitioner established good moral character.

Petitioner is a Syrian national and subject to possible deportation proceedings in the future, and removal to his country at this point in time could be perilous to him and his family.[1] While the Court recognizes these concerns, possible future hardships do not involve the extenuating circumstances of Petitioner's crime. *Id*. at 1196. Therefore, Petitioner did not establish extenuating circumstances. Because Petitioner cannot establish good moral character, the Court will grant Defendants' Motion to Dismiss.

*C. Conclusion*

In light of the foregoing, the Court SUSTAINS Defendants' Objections to Proposed Findings and Recommended Disposition (Doc. 28) and GRANTS Defendants' Motion to Dismiss (Doc. 20).

UNITED STATES DISTRICT JUDGE

---

[1] Without commenting on the merit, the Court notes that Petitioner's arguments may be more appropriate if and when he becomes the subject of administrative removal proceedings.